(C. D. 177)

F. J. BENKART & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 9, 1939)

*F. J. Benkart* for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Charles J. Miville,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover a sum of money paid as customs duties upon an importation of seed potatoes from Canada, entered at the port of New York. The ground of complaint is that the importer was compelled to pay a higher rate of duty upon his merchandise because of the fact that the entry papers were released too late by the entry division of the customhouse to enable him to make payment of duty on November 30, 1936, at which time the lower rate was in effect.

The facts as they appear from the record are that duty was assessed upon the seed potatoes in question at the rate of 60 cents per 100 pounds under the provisions of the trade agreement concluded between the United States and Canada on November 15, 1935 (T. D. 48033). The portion of said agreement applicable is found in schedule II, paragraph 771, and is as follows:

White or Irish seed potatoes, certified by a responsible officer or agency of a foreign Government in accordance with the official rules and regulations of that Government to have been grown and approved especially for use as seed, in containers marked with the foreign Government's official certified seed potato tags, when entered for consumption during the period:

From December 1 to the last day of the following February, inclusive, in any years_____ 60¢ per 100 lbs.
From March 1 to November 30, inclusive, in any year_____ 45¢ per 100 lbs.

Provided, That such potatoes entered for consumption in excess of an aggregate quantity of 750,000 bushels of 60 pounds each in the twelve-month period beginning on December 1 in any year shall not be subject to this provision.

It further appears from the testimony of the customs broker that he filed his entry about 1 o'clock on November 30, 1936, and it was numbered and passed along to the person who approved such entry papers but was not accepted and released until too late for him to pay the duties before 4:30 p. m., the official closing hour of the customhouse. Mr. Benkart, the customs broker, who testified that he had been in that business for the past eighteen years, stated that the time consumed before entry papers are released from the entry division varies from an hour and a half to three hours, sometimes longer. On cross-examination there was an intimation that the affidavit which is necessary in cases of this kind might not have been filed at the time of entry, but no proof was presented on that point. However that may be, the customs broker admitted that he would not regard the time which was consumed between the presentation of the entry and its acceptance and delivery to him unreasonable; that he did not claim neglect on the part of the customs officials.

The hours of business for customs officers at the time this importation was made and during the life of a series of tariff acts have been fixed by the customs regulations promulgated under authority of the statute—in this case by article 1445 of the Customs Regulations of 1931. These hours have been held to be reasonable. *Gallagher* v. *United States,* 1 Ct. Cust. Appls. 69, T. D. 31034; *Talbot* v. *United States,* id. 415, T. D. 31483. We find nothing in this case to show that the necessities or interests of the public service required that the hours should have been prolonged on November 30, 1936.

As above stated, the importer, the customs broker, stated that he would not regard the time consumed between the presentation of the

entry to the entry clerk and its acceptance and delivery to said importer as unreasonable.

The entry not having been completed by the payment of duties and issuance of a delivery permit, these goods were not "entered for consumption" on November 30, 1936, and therefore were not entitled to the rate of 45 cents per 100 pounds, claimed by the plaintiff.

Judgment will therefore be rendered in favor of the defendant. It is so ordered.